

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| GLADYS MAE SMITH MILLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:16-CV-078-BQ |
| NANCY A. BERRYHILL, ) | ECF |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

*Pro se* Plaintiff Gladys Mae Smith Miller seeks judicial review under 42 U.S.C. § 405(g) of a decision by the Commissioner of Social Security denying her application for a lump-sum death benefit pursuant to 42 U.S.C. § 402(i). The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. All of the parties did not consent to the jurisdiction of the magistrate judge. In accordance with the order of transfer, the undersigned now files this Report and recommends that the United States District Court affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

### I. Statement of the Case

On January 18, 2013, Plaintiff filed an application for a lump-sum death benefit under Title II of the Social Security Act based on the earnings record of the deceased wage earner, Arthur Miller (Miller). Tr. 24–27. Miller passed away on January 2, 2013. Tr. 38. The Social Security Administration (SSA) denied Plaintiff's initial application on March 2, 2013, because she did not establish that, under Texas law, she is Miller's widow. Tr. 53–55. On May 21, 2013, SSA denied Plaintiff's application upon reconsideration. Tr. 83–86. On April 1, 2014, Plaintiff testified at a hearing before an administrative law judge (ALJ). Tr. 126–48. Plaintiff did not have counsel at

1

the hearing; however, the ALJ informed Plaintiff of her right to counsel. Tr. 128–29. The ALJ determined on May 30, 2014, that Miller and Plaintiff had never entered into a valid common law marriage, as defined by Texas state law, and that they did not satisfy the elements of a "deemed valid marriage" under 20 C.F.R. § 404.346. Tr. 22–23. Thus, Plaintiff was not the widow of Miller and was not entitled to a lump-sum death benefit. Tr. 23. The Appeals Council denied review on April 20, 2016. Tr. 2. As a result of this denial, the ALJ's decision became the Commissioner's final decision and is therefore properly before the court for review. *Sims v. Apfel*, 530 U.S. 103, 107 (2000); *see also Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005) (holding that the Commissioner's final decision necessarily incorporates the Appeals Council's denial of a claimant's request for review).

## II.  Standard of Review

A court reviewing the Commissioner's denial of social security benefits is limited to determining whether: (1) the decision is supported by substantial evidence in the record; and (2) the Commissioner applied the proper legal standards. *Higginbotham*, 405 F.3d at 335. "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Without reweighing the evidence or substituting its own judgment, a reviewing court must examine the entire record, including evidence favorable to the Commissioner as well as contrary evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the Commissioner's findings are supported by substantial evidence, they are treated as conclusive and will be affirmed. 42 U.S.C. § 405(g) (2017); *Richardson v. Perales*, 402 U.S. 389, 390 (1971).

## III. <u>Discussion</u>

Construing Plaintiff's Complaint liberally, as the court must (*see Harris v. Barnhart*, 204 F. App'x 447, 448 (5th Cir. 2006) (internal citation omitted) (acknowledging that the court liberally construes a *pro se* brief and applies less stringent standards to a party appearing *pro se*)), Plaintiff argues that the court should remand this case for consideration of new evidence under sentence six of 42 U.S.C. § 405(g). Plaintiff also generally alleges that the ALJ erred in concluding she and Miller were not married, either through a common law marriage or a ceremonial marriage. ECF No. 16, at 1–2 (arguing that the ALJ misunderstood her and attacking the validity of the SSA's record); ECF No. 21, at 1 (explaining that she's fighting for a lump-sum payment).[1] Plaintiff contends she is the widow of the deceased wage earner, Arthur Miller, and is therefore entitled to a lump-sum death benefit. ECF No. 21, at 1.

The ALJ made the following findings with respect to Plaintiff's application for benefits: (1) Plaintiff filed an application for a lump-sum death benefit payment based on the earnings record of Miller; (2) Miller was a resident of Texas at the time of his death; thus, the ALJ applied Texas state law to determine whether Miller and Plaintiff had a valid marriage at the time of Miller's death; (3) Miller and Plaintiff never went through a valid marriage ceremony; (4) Miller and Plaintiff never entered into a valid common law marriage, as defined by Texas state law; (5) Miller and Plaintiff never had a deemed valid marriage under 20 C.F.R. § 404.346; (6) Miller and Plaintiff did not customarily live together as husband and wife at the time of his death or at any time prior;

---

[1] On July 27, 2016, Plaintiff filed a "response" to the Commissioner's answer. *See* ECF No. 16. The court subsequently entered its order directing the filing of briefs, and Plaintiff also filed a document in response to that order. *See* ECF No. 21. The court interprets these two filings collectively as Plaintiff's brief, which set forth the errors she contends entitle her to relief.

3

(7) Plaintiff is not the widow of Miller; and (8) Plaintiff is not entitled to a lump-sum death benefit payment. Tr. 12–23.

A. **The court will not consider any documents submitted by Plaintiff not already part of the certified administrative record.**

At the outset, the court notes that Plaintiff attached numerous extraneous documents to her brief to the court. *See* ECF No. 21, at 3–90. Some of these documents are duplicates of documents contained in the certified administrative record; however, many of the documents were not considered at the administrative level. *See id.* at 8–11, 14–15, 17, 20–30, 32–41, 43, 47–56, 60–73, 80–86, and 89–90.

The Commissioner filed a certified copy of the record on July 25, 2016. ECF No. 15-1, at 1 (certifying "the documents annexed hereto constitute a full and accurate transcript of the entire record of proceedings relating to this case"). Plaintiff asserts in her brief that the certified transcript of record—copies of which the Commissioner provided to the court and Plaintiff—is not a fully accurate, "true" copy. ECF No. 16, at 1. Specifically, she claims that with the exception of her signature, page forty-three of the transcript was blank when she originally submitted the document. *Id.* at 2. She also claims that the ALJ "mis read [sic], and misunderstood" her at the April 1, 2014, hearing, and implies that the transcript from the hearing was not accurately transcribed. *Id.* Any argument by Plaintiff generally challenging the accuracy of the certified record filed by the Commissioner is without merit. Other than her general assertions that the record is inaccurate or incomplete, Plaintiff has provided no documentation or competent evidence to support that claim.

To the extent the attached documents can be construed as Plaintiff's argument that the court should remand the case under § 405(g), sentence six, because the record is not accurate, her claim also fails. "As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and

decision complained of are based." 42 U.S.C. § 405(g). The court may only consider documents in the certified transcript of record. *Id.* ("The court shall have power to enter, *upon the pleadings and transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security . . . .") (emphasis added); *see Atteberry v. Finch*, 424 F.2d 36, 39 (10th Cir. 1970) ("Court review of the Secretary's denial of Social Security disability benefits is limited to a consideration of the pleadings and the transcript filed by the Secretary as required by 42 U.S.C. § 405(g)."); *Mann v. Gardner*, 380 F.2d 182, 187 (5th Cir. 1967) (same). Accordingly, the court cannot consider the documents attached to Plaintiff's brief in determining whether the ALJ's decision is supported by substantial evidence.

Instead, the court is limited to remanding a case in the event the claimant discovers new evidence. Specifically, sentence six of § 405(g) provides the exclusive means by which a court may remand a social security case based on the discovery of new evidence. *Dudley v. Astrue*, 246 F. App'x 249, 251 (5th Cir. 2007) (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 97–98 (1991)). Under sentence six, the court does not rule on the merits, "but rather retains jurisdiction over the case and remands to allow the SSA to consider new evidence and/or reconstruct the record." *Acevedo v. Barnhart*, 474 F. Supp. 2d 1001, 1003 (E.D. Wisc. 2007). A sentence six remand is appropriate when "(1) the Commissioner requested a remand before filing his answer, or (2) there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Brown v. Astrue*, 597 F. Supp. 2d 691, 697 (N.D. Tex. 2009) (quoting *Krishnan v. Barnhart*, 328 F.3d 685, 691 (D.C. Cir. 2003)).

Although the court may remand the case under sentence six "to allow the SSA to consider new evidence and/or reconstruct the record" before making a decision on the merits, the court concludes that remand is not necessary in this case because the evidence Plaintiff submitted is not

material, and Plaintiff has not shown good cause for failing to include it at the administrative level. "New" evidence is that which was "not in existence at the time of the administrative . . . proceedings" (*Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)), and is "not merely cumulative of what is already in the record." *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the Secretary's determination.'" *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994) (quoting *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981)). "Implicit in the materiality requirement . . . 'is that the new evidence relate to the time period for which benefits were denied . . . .'" *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985) (quoting *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir.1984)).

Here, many of the documents Plaintiff submitted were not in existence at the time of the administrative proceedings. *See, e.g.*, ECF No. 21, at 29–30, 32–35, 37–41 (statements from different persons attesting to the nature of Plaintiff and Miller's relationship). The court has doubts as to whether these witness statements constitute new evidence. Even assuming the statements "meet[] the 'new' requirement for remand to the Secretary," however, Plaintiff has not established the evidence is material or that there is good cause for not submitting it earlier.[2] *Haywood*, 888 F.2d at 1471. Many of the documents are not relevant to the issue of whether Plaintiff and Miller were married in a ceremonial or common law marriage at the time of Miller's death. For example, the copies of her social security card and driver's license reflecting her name as "Gladys Smith Miller" are dated March 14, 2013, and February 26, 2016, respectively—long after Plaintiff alleges

---

[2] The court notes that some of the documentation Plaintiff submitted was in existence at the time of the April 1, 2014, hearing before the ALJ and is therefore not "new" evidence. *See, e.g.*, ECF No. 21, at 18–19 (a copy of the warranty deed to Plaintiff's home, dated October 30, 2003, and filed and recorded May 1, 2006); 53 ("Relationship Change Application" for bank account with Wells Fargo dated February 19, 2013); 69 (Physician statement dated January 3, 2011).

6

she and Miller married as well as the date Miller passed away. ECF No. 21, at 11; *see also id.* at 23–25 (copy of receipt for purchase of Mercedes-Benz signed by Plaintiff); 26 (receipt from Tarpley Music Company showing instruments sold to "Gladys Smith" or "A Crown of Eternal Life Church"); 62–65 (documents related to a traffic citation Miller received); 81 (handwritten note of unknown significance). Moreover, Plaintiff has not provided good cause for failing to provide the documents or the witnesses' testimony—which were likely available at the time of the hearing—at the administrative level. *See Pierre*, 884 F.2d at 803–04 (finding plaintiff's contention that a medical test was not performed until after the administrative process "is not enough to meet the good cause requirement"); *Nehlig v. Comm'r of Soc. Sec. Admin.*, 40 F. Supp. 2d 841, 850 (E.D. Tex. 1999) (finding plaintiff established good cause for failing to incorporate evidence at the administrative level where evidence did not exist at the time of the administrative hearing). "It is . . . the settled law of our Circuit that new evidence is not the requisite good cause for . . . a remand unless a proper explanation is given of why it was not submitted earlier." *Pierre*, 884 F.2d at 803 (quoting *Geyen v. Sec'y*, 850 F.2d 263, 264 (5th Cir. 1988)). In sum, the court concludes that none of the evidence Plaintiff submitted "dilutes the record to such an extent that the ALJ's decision become[s] insufficiently supported." *Thomas v. Colvin*, No. 3:12–cv–4415–P–BN, 2013 WL 6869652, at *7 (N.D. Tex. Dec. 30, 2013) (citing *Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006)).

Accordingly, this case should not be remanded for consideration of the evidence Plaintiff submitted with her brief to the court.

**B.** **The ALJ's finding that Plaintiff and Miller never entered into a ceremonial or common law marriage is supported by substantial evidence.**

In general, the widow of a deceased wage earner—who was fully or currently insured at the time he passed away—is entitled to a lump-sum death payment of $255.00, if the widow was

7

living in the same household as the deceased at the time of his death. 20 C.F.R. § 404.390. More specifically, the regulations provide as follows:

> You are entitled to the lump-sum death payment as a widow or widower who was living in the same household if—
> (a) You are the widow or widower of the deceased insured individual based upon a relationship described in § 404.345 or § 404.346;
> (b) You apply for this payment within two years after the date of the insured's death. You need not apply again if, in the month prior to the death of the insured, you were entitled to wife's or husband's benefits on his or her earnings record; and
> (c) You were living in the same household with the insured at the time of his or her death. The term *living in the same household* is defined in § 404.347.

*Id.* § 404.391 (emphasis in original). "Living in the same household means that [the widow] and the insured customarily lived together as husband and wife in the same residence." *Id.* § 404.347. A claimant may establish a marital relationship with the deceased by showing either: (1) they were validly married under the laws of the state in which the deceased wage earner resided at the time of his death; or (2) the claimant and the wage earner had a "deemed valid marriage" under 20 C.F.R. § 404.346.

Miller was a resident of Texas at the time of his death on January 2, 2013; therefore, Texas state law determines whether Plaintiff and Miller were validly married at the time of Miller's death. Tr. 18; 20 C.F.R. § 404.345 ("To decide your relationship as the insured's widow or widower, we look to the laws of the State where the insured had a permanent home when he or she died."). Texas law provides two ways to enter into a valid marriage. The first is through a ceremonial marriage, performed by a person authorized to conduct a marriage ceremony. *See* Tex. Fam. Code Ann. §§ 2.001, 2.202 (West 2006). A couple may also enter into an informal marriage—i.e., a common law marriage. *See id.* § 2.401.

### 1. *Plaintiff provided no competent evidence that she and Miller entered into a valid ceremonial marriage, and the ALJ's conclusion they did not is supported by substantial evidence.*

The ALJ concluded that Plaintiff and Miller "did not have a ceremonial marriage at any time prior to his death." Tr. 19. There is substantial evidence to support the ALJ's conclusion. In his decision, the ALJ noted that in her original application for a lump-sum payment dated January 2013, Plaintiff alleged she and Miller had a common law marriage. *Id.*; *see* Tr. 42–45[3] (attesting to the fact that she and Miller began living together as husband and wife on April 17, 2006). Several months later, however, Plaintiff contacted the SSA and informed an agent that "she had acquired a statement from A.L. Butler," whom she alleged performed a ceremonial marriage between Plaintiff and Miller on January 6, 2010.[4] Tr. 19, 89, 97. The ALJ reviewed the evidence related to whether Plaintiff and Miller had entered into a ceremonial marriage and made the following findings: (1) no evidence existed demonstrating that A.L. Butler—the person whom Plaintiff alleges performed the ceremony—was a person authorized to conduct a marriage ceremony, as defined by § 2.202 of the Texas Family Code (TFC); (2) Plaintiff did not provide evidence showing she and Miller "had obtained a marriage license from a County Clerk prior to the purported ceremony"; (3) the alleged statement signed by A.L. Butler and dated June 25, 2013, "had no seal, no witnesses, and obviously, it does not bear the signature of [Miller], as he had been

---

[3] The "Statement of Marital Relationship" is a form promulgated by the SSA and should be completed by the applicant to help establish the existence of a valid common law marriage. Social Security Handbook, *1717. Evidence of Common-Law Marriage* (Mar. 12, 2009), https://www.ssa.gov/OP_Home%2Fhandbook/handbook.17/handbook-1717.html. Plaintiff completed this form on January 25, 2013. Tr. 45.

[4] The SSA agent reported the following regarding the written statement from A.L. Butler: "In viewing the document there is no seal, nor is there a witness to the signature. The signatures appear to be very similar in nature as if they were signed by the same person. . . . [Plaintiff] continues to submit questable [sic] evidence only after discovering what type of evidence is required to qualify for benefits." Tr. 89.

deceased for six months at the time it was executed"; A.L. Butler is now deceased and did not testify at the hearing before the ALJ; and (4) as the SSA agent noted, "the handwriting on both signatures [of the statement purportedly signed by A.L. Butler] seemed very similar." Tr. 19.

In Texas, to enter into a valid ceremonial marriage: (1) a couple must obtain a marriage license (§ 2.001(a)); (2) the county clerk must execute the marriage license (§ 2.008); and (3) the ceremony must be performed within ninety days of issuance of the license. Tex. Fam. Code Ann. § 2.201. The ceremony must be conducted by a clergyman, state or federal judge, or other public official. *Id.* § 2.202; *Johnson v. Astrue*, No. H–11–2748, 2012 WL 3561449, at *3 (S.D. Tex. Aug. 15, 2012) ("In Texas, a valid marriage can be established through a ceremony performed by a clergyman or other public official."). Upon completion of the ceremony, "the person who conducts a marriage ceremony shall record on the license the date on which and the county in which the ceremony is performed . . . and return the license to the county clerk who issued it not later than the 30th day after the date the ceremony is conducted." Tex. Fam. Code Ann. § 2.206(a). Plaintiff has wholly failed to demonstrate that she and Miller complied with the requirements to enter into a valid ceremonial marriage. Based on the foregoing, substantial evidence supports the ALJ's determination that Plaintiff and Miller had never entered into a valid ceremonial marriage.

## 2. *The ALJ's conclusion that Plaintiff and Miller did not enter into a valid common law marriage is supported by substantial evidence.*

Under § 2.401 of the TFC, a party may establish an informal, or common law, marriage by presenting evidence that the parties filed a declaration of informal marriage with the county clerk. *Id.* § 2.401(a)(1). The filing of a declaration of informal marriage constitutes "prima facie evidence of the marriage of the parties." *Id.* § 2.404(d). Evidence may be offered, however, to rebut "the existence of the marriage as sworn to or stated in the declaration." *Colburn v. State*, 966 S.W.2d 511, 514 (Tex. Crim. App. 1998).

10

The couple may also establish an informal marriage by demonstrating that: (1) they "agreed to be married"; (2) "after the agreement they lived together in [Texas] as husband and wife"; and (3) they "represented to others that they were married." Tex. Fam. Code Ann. § 2.401(a)(2); *see also Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) ("Although such a declaration [of informal marriage] constitutes prima facie proof of the parties['] informal marriage, the parties need not make the declaration to have a valid common law marriage."). The party seeking to establish the existence of an informal marriage "bears the burden of demonstrating the three elements by a preponderance of the evidence." *Farrell v. Farrell*, 459 S.W.3d 114, 117 (Tex. App.—El Paso 2015, no pet.) (citing *Small v. McMaster*, 352 S.W.3d 280, 282–83 (Tex. App.—Houston [14th Dist.] 2011, pet. denied)).

Here, Plaintiff and Miller filed a declaration of informal marriage with the Lubbock, Texas county clerk on January 20, 2011 (Declaration), attesting that they agreed to be married on April 17, 2006, had lived together as husband and wife since that date, and represented to others that they were married. Tr. 35. This Declaration constitutes *prima facie* proof of their informal marriage. *Russell*, 865 S.W.2d at 931. As the ALJ explained in his decision, however, "there are significant irregularities surrounding the statements made in the Declaration, and other evidence in the record directly contradicts the allegations in that document." Tr. 19. The ALJ dedicated more than five pages of his decision to carefully reviewing all of the record evidence. Tr. 12–18. After reviewing the evidence, the ALJ specifically found Plaintiff had not demonstrated, by a preponderance of the evidence, that Plaintiff and Miller agreed to be married in April 2006, lived together as husband and wife, and held each other out as husband and wife. Tr. 19. Consequently, the ALJ determined that this contradictory evidence rebutted the presumption of validity of their

informal marriage raised by the declaration. *See* Tr. 22. Substantial evidence supports the ALJ's conclusion.[5]

As the ALJ explained, Plaintiff reported numerous times—and also testified to the fact—that she and Miller began their informal marriage in April 2006. *See, e.g.*, Tr. 25 ("The deceased was last married to Gladys Smith on April 17, 2006 in TX."); Tr. 35 (listing April 17, 2006, as date Plaintiff and Miller agreed to be married in the declaration of informal marriage filed in Lubbock County); Tr. 39 (Miller's obituary published on January 10, 2013, listing April 2006 as date of marriage to Plaintiff); Tr. 42 (listing April 17, 2006, as date Plaintiff and Miller began living together as husband and wife); Tr. 138 (testifying that Plaintiff and Miller began living together on April 17, 2006). Yet much of the evidence in the record contradicts this assertion. *See* Tex. Fam. Code Ann. § 2.401(a)(2) (requiring that *both* parties agree to be married); *Thomas v. Sun Life Assur. Co. of Canada*, No. H-09-3162, 2010 WL 2991116, at *2 (S.D. Tex. July 26, 2010) (citing Tex. Fam. Code § 2.401(a)(2)) (listing three elements the proponent of a common law marriage must prove, including "that both parties agree to be married"). For example, Plaintiff reported to the Department of Human Services (DHS) in an application for food stamps that Miller was her "roommate/friend" and Miller paid her $100 per month in rent. Tr. 74. DHS records also

---

[5] On appeal, this court must determine whether substantial evidence supports the ALJ's decision that Plaintiff did not establish, by a preponderance of evidence, that she and Miller had a valid common law marriage. *See Higginbotham*, 405 F.3d at 335 (discussing standard of review on social security appeal); *Stuberg v. Colvin*, No. 3:15-CV-3505-D, 2016 WL 3745681, at *4 (N.D. Tex. July 13, 2016) ("At the outset, the court emphasizes that the relevant inquiry is *not* whether the ALJ's decision is supported by a preponderance of the evidence, or whether the Commissioner or the court could have reached a different conclusion at the administrative level. Rather, the court's review of the ALJ's decision is limited to determining whether substantial evidence supports his decision.") (emphasis in original). In other words, this court reviews under the substantial evidence standard, while at the administrative level the ALJ determined whether Plaintiff had established by a preponderance of the evidence that she and Miller had a valid common law marriage. *Stuberg*, 2016 WL 3745681, at *4.

that Plaintiff reported Miller was no longer living in her home as of March 2013. *Id.* Similarly, in August 2011—more than six months after filing the declaration of informal marriage and more than one year after her purported ceremonial marriage to Miller—Plaintiff reported to Adult Protective Services that Miller was her friend and he paid rent to stay in her home. Tr. 82. Indeed, the home where Miller lived with Plaintiff was solely in Plaintiff's name. Tr. 145. Moreover, Miller's will, dated September 17, 2009—more than three years after Plaintiff alleges they agreed to begin living together as husband and wife—states that Miller was not married. Tr. 112. Miller did name Plaintiff in the will, however, bequeathing her his estate and naming her executrix of the estate, indicating that although Miller had some type of relationship with Plaintiff, he did not acknowledge it as husband and wife. Tr. 112–13. In sum, the records show that although Plaintiff and Miller cohabitated together, they did not agree to do so as husband and wife. Accordingly, there is substantial evidence in the record to support the ALJ's finding that Plaintiff and Miller did not agree to be married. *See Russell*, 865 S.W.2d at 933 (explaining that factually "sufficient evidence of cohabitation and public representation will not necessarily constitute legally and/or factually sufficient evidence of an agreement to be married").

In addition, the ALJ's conclusion that Plaintiff and Miller did not represent to others that they were married is supported by substantial evidence. As discussed above, Plaintiff reported to third parties on several occasions that Miller was her "friend" and "roommate." *See* Tr. 74, 82. Moreover, as the ALJ discussed in his opinion, the statements from Miller's family are consistent: Miller never told them he was married and referred to Plaintiff as his friend. *See* Tr. 48–52 (Statement from Verna Sampson, Miller's step-daughter: "I was told by Arthur Miller and Gladys Smith more than one time that there was nothing between them other than friendship . . . ."); Tr. 58–60 (Statement from Mike Wheeler, Miller's nephew, reporting that Plaintiff and Miller lived

13

in two separate bedrooms.); Tr. 61–62, 65–67 (Statement from Janet Hall, Miller's daughter-in-law, reporting that Miller referred to Plaintiff as a friend with a shared religious interest. Ms. Hall believed Plaintiff took care of Miller in exchange for financial support.); Tr. 63–64, 69–70 (Statement from Cora Corneliuson, Miller's sister-in-law, reporting that when she asked Plaintiff whether she and Miller were married, Plaintiff stated "I married the Lord twenty years ago.").

Plaintiff did present some evidence demonstrating that she and Miller held themselves out as husband and wife, which the ALJ considered. Tr. 13; *see* Tr. 37 (Automobile insurance application with an effective date of June 5, 2012, listing Plaintiff and Miller as "married"); Tr. 38 (Plaintiff listed as wife on Miller's death certificate); Tr. 90 (Statement from Lloyd McConnell, Jr., a friend of Miller, who stated he believed Plaintiff and Miller were married on April 7, 2006); Tr. 96 (Statement from Noe Perez "confirm[ing] that both Gladys Smith-Miller and Arthur D Miller were married"). Nevertheless, the ALJ concluded that as a whole, "the preponderance of the evidence does not support the three essential elements of a common law marriage" and in fact rebuts the presumption of validity of the informal marriage raised by the declaration. Tr. 19.

Based on all of the evidence before the ALJ, the court finds that the ALJ's determination that Plaintiff and Miller did not have a valid common law marriage is supported by substantial evidence.

### C. Plaintiff and Miller did not have a "deemed valid marriage" under 20 C.F.R. § 404.346.

The Social Security regulations provide that if a claimant cannot establish a relationship as the insured's wife in accordance with state law under § 404.345, the claimant may nevertheless be "eligible for benefits based upon a deemed valid marriage." 20 C.F.R. § 404.346(a). Specifically, the claimant "will be deemed to be the wife . . . of the insured if, in good faith, [the claimant] went through a marriage ceremony with the insured that would have resulted in a valid marriage except

for a legal impediment. A legal impediment includes only an impediment which results because a previous marriage had not ended at the time of the ceremony or because there was a defect in the procedure followed in connection with the intended marriage." *Id.* As the court discussed above, substantial evidence supports the ALJ's conclusion that Plaintiff and Miller did not go through a valid marriage ceremony; thus, § 404.346 is not applicable to this case.

### IV. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court affirm the Commissioner's decision and dismiss Plaintiff's Complaint with prejudice.

### V. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 16, 2017

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

15